UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:

                                        Case No.: 8-18-75891-las

Francis Nuara *aka* Frank C. Nuara
*aka* Francis C. Nuara and
Lori Nuara *aka* Lori A. Nuara,

                                        Chapter 7

                   Debtors.
------------------------------------------------------------x

## MEMORANDUM DECISION AND ORDER

This matter is before the Court on the objection of the chapter 7 trustee, Andrew M. Thaler, Esq., to the exemption claimed by the debtors pursuant to 11 U.S.C. § 522(b),[1] New York Debtor and Creditor Law § 282(2),[2] and Bankruptcy Rule 4003(b) in a certain workers' compensation award of $45,623.23 received by the debtors before they filed for bankruptcy. Specifically, the trustee asserts that under NYDCL § 282(2)(c) only the right to receive a workers' compensation benefit is exempt in bankruptcy, not the prepetition payment of the benefit itself. According to the trustee, once a workers' compensation payment or benefit has been received, it is no longer exempt should the recipient subsequently file for bankruptcy. The debtors take a different view of the applicable statute and its import. They argue that all disability benefits, of which workers' compensation is one, are exempt no matter when paid, and this is particularly so when the proceeds of the award are identifiable at the time a bankruptcy petition is filed. The debtors therefore contend they are entitled to their claimed exemption for the workers' compensation award.

---

[1] All statutory references to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, will hereinafter be referred to as "§ (section number)".

[2] All statutory references to New York Debtor and Creditor Law will hereinafter be referred to as "NYDCL § (section number)".

The Court has jurisdiction over this matter under 28 U.S.C. § 1334(b) and the Standing Order of Reference entered by the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 157(a), dated August 28, 1986, as amended by Order dated December 5, 2012, effective *nunc pro tunc* as of June 23, 2011. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B) in which final orders or judgment may be entered by this Court pursuant to 28 U.S.C. § 157(b)(1).

The Court has considered carefully the arguments of counsel and has reviewed thoroughly the parties' submissions. This Memorandum Decision and Order constitutes the Court's findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, made applicable here by Bankruptcy Rules 9014 and 7052. To the extent a finding of fact includes a conclusion of law, it is deemed a conclusion of law, and vice versa.

For the following reasons, the Court finds in favor of the debtors. Accordingly, the trustee's objection is overruled and the exemption is allowed.

I.    Background

A.  Factual Background and Procedural History

The relevant facts are not in dispute. On August 3, 2018, Chubb/ACE Property and Casualty Insurance Company issued a check to Mr. Nuara in the amount of $45,623.23 pursuant to a Notice of Decision issued by the State of New York Workers' Compensation Board ("Board"). Tr. Obj. Ex. 2. The award was rendered after a hearing held on May 2, 2018 at which the Board found that Mr. Nuara suffered a permanent partial disability relating to the use of his right leg due to an accident that occurred on October 1, 2012. Tr. Obj. Ex. 1. The disability payment was for a period of 57.6 weeks starting October 1, 2012 and ending November 7, 2013 at a rate $792.07 a week. *Id.* Mr. Nuara' average wage for the year he worked before the work-related injury was $1,935.11 per payroll period.

On August 30, 2018, the debtors filed a chapter 7 bankruptcy petition together with required schedules and statements. [dkt. no. 1]. The debtors' schedule I (income) specifies that during the months leading up to the petition date, Mr. Nuara received disability payments from his former employer from February 2018 through June 21, 2018. *Id.* Schedule I explains that since Mr. Nuara is no longer employed, the long-term disability payment from his employer ended. He also received short term disability payments from New York State from January 2018 through July 2018 in the amount of $736.67 a month. *Id.* Additionally, he received long term disability from New York State from May 2018 to the petition date in the amount of $3,309 per month. *Id.* This long-term disability is his only source of income. Mr. Nuara claims he is disabled for life. Jan. 15, 2019 Hr'g Tr. ("Hr'g Tr.") at 4:2-3.

Prior to the commencement of their bankruptcy case, the debtors received the workers' compensation check in the amount of $45,623.23. At the time this matter was heard by the Court, the debtors had not cashed the check and the parties do not dispute that the proceeds are identifiable as a workers' compensation disability payment.

In schedule C (property claimed as exempt), the debtors claimed an $8,550 exemption under NYDCL § 282(3)(iii) for workers' compensation in an unknown amount. [dkt. no. 1]. On October 24, 2018, the trustee filed an objection to the debtors' claimed exemption arguing that the funds are not exempt under NYDCL § 282(3)(iii) nor under NYDCL § 282(2)(c). [dkt. no. 10]. The debtors amended their schedule C on November 15, 2018 to withdraw their claim for an exemption under NYDCL § 282(3)(iii). [dkt.no. 13]. They now claim that the workers' compensation award is exempt in its entirety under NYDCL § 282(2)(c), New York Workers'

Compensation Law §§ 33, 218,[3] and New York Labor Law § 595(2).[4] The debtors filed opposition to the trustee's objection on November 29, 2018. [dkt. no. 16]. The trustee filed a reply on December 4, 2018. [dkt. no. 17]. A hearing on the trustee's objection was held on December 6, 2018 at which the trustee requested that the matter be scheduled for oral argument. On December 13, 2018, the trustee filed a letter in which he again requested that this matter be set down for oral argument [dkt. no. 19]. The trustee filed a supplemental brief on January 9, 2019. [dkt. no. 22]. The Court heard oral argument on January 15, 2019. At the conclusion of the hearing and for the reasons set forth on the record, the Court ruled in favor of the debtors and allowed the claimed exemption. The trustee subsequently requested that the Court issue a written opinion allowing the claimed exemption. This Memorandum Decision and Order is consistent with the Court's bench ruling and explains further the bases of the Courts' ruling.

B.  The Trustee's Objection

The trustee does not dispute that disability and workers' compensation benefits are generally exempt outside of bankruptcy and concedes that such benefits would be exempt if made payable or earned after the bankruptcy filing. However, the trustee contends that benefit payments received by a debtor prior to filing for bankruptcy are not exempt from creditors' reach in bankruptcy. The trustee urges the Court to follow *In re Wydner*, 454 B.R. 565 (Bankr. W.D.N.Y. 2011) where the bankruptcy court held that a workers' compensation disability payment received by a debtor before bankruptcy is not exempt under NYDCL § 282(2)(c). In *Wydner*, the court distinguished its prior ruling in *In re Herald*, 294 B.R. 440

---

[3] All statutory references to New York Workers' Compensation Law will hereinafter be referred to as "Work. Comp. Law § (section number)".

[4] All statutory references to New York Labor Law will hereinafter be referred to as "Labor Law § (section number)".

(Bankr. W.D.N.Y. 2004) where it found that future payments of workers' compensation benefits are exempt under NYDCL § 282(2)(c). The dispute in *Wydner* was whether the debtor could exempt a lump sum workers' compensation award received before commencement of the bankruptcy case which was traceable to the award itself. The *Wydner* court said no and held that only the right to receive the payment in the future, and not the payment itself, is exempt. In so finding, the *Wydner* court concluded that the phrase at issue here "the debtor's interest in" rendered the text of NYDCL § 282(2) ambiguous thus requiring consideration of the legislative history. In going beyond the statutory text and considering the limited legislative history, the Wydner court determined that the phrase "the debtor's interest in" applied only to subclause (e) of NYDCL § 282(2) and not to subclauses (a)-(d).

Based on the *Wydner* court's reasoning, the trustee asks this Court to find that (1) the phrase "the debtor's interest in" as set forth in NYDCL § 282(2) is ambiguous, (2) the New York legislature intended the phrase "the debtor's interest in" to apply only to certain ERISA-qualified retirement plans under NYDCL § 282(2)(e) to exempt payments under those plans in bankruptcy,  but did not intend to exempt "the debtor's interest in" any of the benefits set forth in NYDCL § 282(2)(a)-(d), and (3) because only a debtor's "right to receive" a benefit under NYDCL § 282(2)(c) is exempt in bankruptcy and not the benefit (i.e., the payment) itself, a workers' compensation payment that is received prepetition is not exempt.

The trustee also contends that while NYDCL § 282(3)[5] provides an express mechanism for tracing the source of payments to determine whether the payments may properly be

---

[5] NYDCL § 282(3) provides for the following exemption:

> The debtor's right to receive, or property that is traceable to: (i) an award under a crime victim's reparation law; (ii) a payment on account of the wrongful death of an individual of whom the debtor was a dependent to the extent reasonably necessary for the support of the debtor and any dependent of the debtor; (iii) a payment, not to exceed seventy-five hundred dollars on account of personal bodily injury, not including pain and suffering or compensation for actual pecuniary loss, of the debtor or an individual of whom the debtor is a dependent; and (iv) a payment in compensation of loss of future earnings of the debtor or an individual of whom the debtor is or

claimed as exempt, such tracing mechanism is not found in NYDCL § 282(2). In short, the trustee argues that although payments received prepetition are exempt under state law, that is not the case in bankruptcy. According to the trustee, these prepetition payments should be viewed as cash upon a bankruptcy filing and the source of the payment is irrelevant unless the payment is received post-petition. The trustee also argues that even if NYDCL § 282(2) permits an exemption for "the debtor's interest in" a disability and unemployment benefit, "payment" is different from "benefit" and payment is excluded from the exemption provided under NYDCL § 282(2)(c). In sum, the trustee contends that an exemption for a prepetition payment of disability or unemployment benefits gives debtors a head start as opposed to the well-recognized bankruptcy policy of a fresh start.

C.  The Debtors' Opposition

The debtors argue that workers' compensation and disability awards are generally exempt under Work. Comp. Law §§ 33 and 218(2) and Labor Law § 595(2). They contend that the award continues to be exempt in bankruptcy as it falls under what the debtors argue is the clear statutory language that exempts "the debtor's interest in" a disability, illness, or unemployment benefit under NYDCL § 282(2)(c). In the debtors' view, it would be contrary to the principle of giving a debtor a fresh start in bankruptcy if the very act of filing for bankruptcy would cause a debtor to lose an exemption for a workers' compensation award that she would otherwise be entitled to under applicable non-bankruptcy law. According to the debtors, to rule otherwise would be inconsistent with the goal of the exemption laws and the protection accorded an individual debtor in bankruptcy.

---

was a dependent, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor.

In addition, the debtors argue that *Wydner* is distinguishable and its reasoning should not be followed by this Court. They point out that in *Wydner* the debtors used a portion of the funds received prepetition to purchase luxury items and carpeting for their home. This, the debtors contend, is simply not the case here and, in any event, *Wydner* is not controlling authority.

II.    Discussion

A.  Burden of Proof

The trustee bears the burden of proving, by a preponderance of the evidence, that the debtors' claimed exemption is improper. See Fed. R. Bankr. P. 4003(c) ("In any hearing under this rule, the objecting party has the burden of proving that the exemptions are not properly claimed."); *In re Bellafiore*, 492 B.R. 109, 113 (Bankr. E.D.N.Y. 2013). *See also Fido's Fences, Inc. v. Bardonaro*, No. 15-CV-3025 (JMA), 2015 WL 7738020, at *3 (E.D.N.Y. Nov. 30, 2015) (stating that a "party objecting to a debtor's claim of an exemption bears the burden of proving, by preponderance of the evidence, that the exemption is improper"). "The burden of showing something by a preponderance of the evidence … simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence …." *Metro. Stevedore Co. v. Rambo*, 521 U.S. 121, 137 n.9 (1997) (quoting *Concrete Pipe and Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 622 (1993)).

B.  Exemption Laws in Bankruptcy

"The commencement of a case … creates an estate." 11 U.S.C. § 541(a). The estate consists of the property identified in § 541(a)(1)-(7). In a chapter 7 case, the bankruptcy trustee collects and sells property of the estate, *see* 11 U.S.C. § 704(a)(1), and the proceeds from the sale of property of the estate are distributed in accordance with the statutory scheme set forth in § 726. Under § 522(b)(1), an individual debtor is permitted to exempt certain

property from the bankruptcy estate.[6] If properly claimed, exempt property is not available to pay the claims of certain creditors during the bankruptcy case and, with limited exceptions, after the bankruptcy case as well. *See* 11 U.S.C. § 522(c). Section 522(b)(1) provides that an individual debtor may exempt what is allowed under applicable state exemption laws plus certain additional exemptions, *see* 11 U.S.C. § 522(b)(3), or what is allowed under the federal exemptions unless applicable state law precludes its residents from claiming the federal exemptions listed under § 522(d), *see* 11 U.S.C. § 522(b)(2). Section 522(b)(2) contains what is commonly referred to as the "opt-out" provision. Under the "opt-out" provision a debtor may not elect the federal exemptions under § 522(b)(2) if "the State law that is applicable to the debtor . . . specifically does not so authorize." New York is not an "opt-out" state and a New York debtor is allowed to exempt property under New York and federal nonbankruptcy law or elect the federal exemptions.[7]

The rationale for protecting certain property from creditor claims is to provide a debtor with some comfort that she will not be impoverished and emerge from bankruptcy with a fresh start.[8] "Exemptions prevent a debtor from losing everything. They also promote a debtor's fresh start after the bankruptcy discharge because the debtor will be able to use the

---

[6] Section 522(b)(1) provides, in part, that "[n]otwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph 2 or, in the alternative, paragraph 3 of this subsection." 11 U.S.C. § 522(b)(1).

[7] Here, the debtors have elected to exempt what is allowed under New York and federal nonbankruptcy law, *see* debtors' amended schedule C (property claimed as exempt). In so doing, the debtors have claimed that the workers' compensation payment is exempt under NYDCL § 282(2)(c), Work. Comp. Law §§ 33 and 218(2), and Labor Law § 595(2).

[8] "Current state and federal exemption laws promote five distinct social policies. Each specific exemption should further one or more of the following policies: (1) To provide the debtor with property necessary for his physical survival; (2) To protect the dignity and the cultural and religious identity of the debtor; (3) To enable the debtor to rehabilitate himself financially and earn income in the future; (4) To protect the debtor's family from the adverse consequences of impoverishment; (5) To shift the burden of providing the debtor and his family with minimal financial support from the society to the debtor's creditors." Alan N. Resnick, *Prudent Planning or Fraudulent Transfer? The Use of Nonexempt Assets to Purchase or Improve Exempt Property on the Eve of Bankruptcy*, 31 RUTGERS L. REV. 615, 621 (1978).

exempt property to aid in financial rehabilitation." *In* re *Little*, No. 05-68281, 2006 WL 1524594, at *3 (Bankr. N.D.N.Y. Apr. 24, 2006). The bankruptcy "fresh start" policy is at the heart of the bankruptcy system. "[T]he principal purpose of the Bankruptcy Code is to grant a "'fresh start'" to the "'honest but unfortunate debtor.'" *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367 (2007) (quoting *Grogan v. Garner*, 498 U.S. 279, 286-87 (1991)). While the bankruptcy discharge is most often associated with the fresh start policy, exemptions are also a critical component of this basic bankruptcy principle. Absent such protection, all of a debtor's property would be liquidated by the chapter 7 trustee and used to satisfy creditor claims. Exemption laws, therefore, strike a necessary balance between the need of a debtor to protect her family from impoverishment and the need for general creditors to receive a distribution – property claimed as exempt is excluded from the bankruptcy estate and kept by a debtor even though creditors are not paid. *See Clark v. Rameker*, 573 U.S. 122, 129 (2014) (exemptions "effectuate a careful balance between the interests of creditors and debtors."). As stated by the Supreme Court, "exemptions serve the important purpose of protect[ing] the debtor's essential needs." *Id.* (internal quotation marks and citation omitted). Mindful of this vital purpose of protecting a debtor's essential needs, courts construe exemptions liberally. "[E]xemption statutes are to be construed liberally in the favor of a debtor." *In re Apergis*, 539 B.R. 24, 28 (Bankr. E.D.N.Y. 2015) (quoting *In re Moulterie*, 398 B.R. 501, 504 (Bankr. E.D.N.Y. 2008)). *See also Santiago-Monteverde v. Pereira (In re Santiago-Monteverde)*, 24 N.Y.3d 283, 292 (N.Y. 2014).

C.  The New York State Exemption for Workers' Compensation Benefits

As noted above, under § 522(b)(1), the debtors elected to exempt from property of the estate property that is exempt under applicable New York State and federal nonbankruptcy law, *see* debtors' schedule C (property claimed as exempt); § 522(b)(3). Specifically, the

debtors claimed that the workers' compensation benefit received by Mr. Nuara prepetition is exempt under NYDCL § 282(2)(c), Work. Comp. Law §§ 33, 218(2), and Labor Law § 595(2).

Under the applicable New York State law, workers' compensation benefits are exempt from creditors' claims, with the exception of income executions relating to maintenance, alimony and child support obligations. Work. Comp. Law § 33 provides in relevant part:

> Compensation or benefits due under this chapter shall not be assigned, released or commuted except as provided by this chapter, and shall be exempt from all claims of creditors and from levy, execution and attachment or other remedy for recovery or collection of a debt, which exemption may not be waived provided, however, that compensation or benefits other than payments pursuant to section thirteen of this chapter shall be subject to application to an income execution or order for support enforcement pursuant to section fifty-two hundred forty-one or fifty-two hundred forty-two of the civil practice law and rules.

Work. Comp. Law § 33.

Similarly, Work. Comp. Law § 218(2) relating to disability benefits provides as follows:

> 2. Disability benefits payable under this article shall not be assigned or released, except as provided in this article, and shall be exempt from all claims of creditors and from levy, execution and attachment or other remedy for recovery or collection of a debt, which exemption may not be waived provided, however, that such benefits shall be subject to an income execution or order for support enforcement pursuant to section fifty-two hundred forty-one or fifty-two hundred forty-two of the civil practice law and rules.

Work. Comp. Law § 218(2).

Likewise, Labor Law § 595(2) provides that "benefits shall not be assigned, pledged, released or commuted and shall be exempt from all claims of creditors and from levy, execution, and attachment, or other remedy for recovery or collection of a debt. This exemption may not be waived." Labor Law § 595(2).

The public policy behind protecting disability and workers' compensation awards from the reach of creditors is a long standing one.

> The Workmen's Compensation Law was framed to supply an injured workman with a substitute for wages during the whole or at least part of the term of disability. He was to be saved from becoming one of the derelicts of society, a fragment of human wreckage. He was to have enough to sustain him in a fashion measurably consistent with his former habits of life during the trying days of readjustment. The cost of such support becomes a charge upon the industry without regard to fault. Rehabilitation of the man, not payment of his ancient debts, is the theme of the statute, and its animating motive.

> The exemption must have a meaning consistent with the policy behind it.

*Surace v. Danna*, 248 N.Y. 18, 21, 161 N.E. 315 (1928) (finding workers' compensation award deposited into an account is exempt under Work. Comp. Law § 33 from all claims of creditors and from levy, execution and attachment or other remedy for recovery or collection of a debt and reasoning that if the exemption only protects a benefit from the pursuit of creditors before the award reaches the judgment debtor, then the exemption would be "next to futile.").

When a debtor files for bankruptcy in New York and elects to claim exemptions under New York and federal non-bankruptcy law, the applicable state exemptions are set forth in NYDCL §§ 282 and 283. NYDCL § 282(2), relied upon by the debtors and at issue in this case, provides in relevant part:

> 2. Bankruptcy exemption for right to receive benefits. The debtor's right to receive or the debtor's interest in: (a) a social security benefit, unemployment compensation or a local public assistance benefit; (b) a veterans' benefit; (c) a disability, illness, or unemployment benefit; (d) alimony, support, or separate maintenance, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor; and (e) all payments under a stock bonus, pension, profit sharing, or similar plan or contract on account of illness, disability, death, age, or length of service unless (i) such plan or contract, except those qualified under section 401, 408 or 408A of the United States Internal Revenue Code of 1986, as amended, was established by the debtor or under the auspices of an insider that employed the debtor at the time the debtor's rights under such plan or contract arose, (ii) such plan is on account of age or length of service, and (iii) such plan or contract does not qualify under section four hundred one (a), four hundred three (a), four

hundred three (b), four hundred eight, four hundred eight A, four hundred nine or four hundred fifty-seven of the Internal Revenue Code of nineteen hundred eighty-six, as amended.

NYDCL § 282(2).

With this statutory and legal framework in mind, the Court now turns to the present dispute which derives from the parties' conflicting interpretation of the language in NYDCL § 282(2), particularly the phrase "the debtor's interest in" and its application to subclauses (a) through (e).

D.  Analysis

The question before the Court is whether the phrase "the debtor's interest in" as it is used in NYDCL § 282(2) applies to subclauses (a) through (e) or does it apply only to subclause (e)? The trustee contends that the phrase is limited to subclause (e), and the debtors' claimed exemption under subclause (c) must be disallowed. To support his position, the trustee cites to a single authority, the *Wydner* decision. The trustee argues, relying on *Wydner*, that the phrase "the debtor's interest in" renders the statutory text ambiguous and that this Court should, as did the *Wydner* court, consult legislative history for assistance in interpreting the statutory language. In contrast, the debtors assert that the trustee's attempt to limit the application of the phrase "the debtor's interest in" to subclause (e) is contrary to the clear terms of the statute.

In addition, the trustee contends that even if the phrase "the debtor's interest in" includes workers' compensation benefits under subclause (c), the claimed exemption should not be allowed because a distinction must be drawn between the term "payment" as used in subclause (e) and the term "benefit" as used in subclause (c). The debtors disagree and again argue that such a reading ignores the plain and unambiguous language of the statute. For reasons discussed below, both of the trustee's arguments are rejected.

1.  Principles of Statutory Interpretation

The "first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997). "A statute generally 'should be enforced according to its plain and unambiguous meaning.'" *Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 111 (2d Cir. 2015) (quoting *United States v. Livecchi*, 711 F.3d 345, 351 (2d Cir. 2013)). "In evaluating ambiguity we look to the statutory scheme as a whole and place the particular provision within the context of that statute." *Raila v. United States*, 355 F.3d 118, 120 (2d Cir. 2004). *See Robinson*, 519 U.S. at 341 ("The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which the language is used, and the broader context of the statute as a whole."); *Auburn Hous. Auth. v. Martinez*, 277 F.3d 138, 144 (2d Cir. 2002) ("[T]he preferred meaning of a statutory provision is one that is consonant with the rest of the statute."). As the Supreme Court has observed, "[o]ur inquiry must cease if the statutory language is unambiguous and 'the statutory scheme is coherent and consistent.'" *Robinson*, 519 U.S. at 340. *See Connecticut Nat'l Bank v Germain*, 503 U.S. 249, 253-54 (1992) ("[I]n interpreting a statute a court should always turn first to one, cardinal canon before all others. We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. … When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'"). Where, however, the statutory language is ambiguous, the court may "turn to canons of statutory construction for assistance in interpreting the statute", *Greathouse*, 784 F.3d at 111, and "resort to legislative history only if, after consulting canons of statutory instruction, the meaning remains ambiguous." *United States*

*v. Rowland,* 826 F.3d 100, 107 (2d Cir. 2016) (citing *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 423 (2d Cir. 2005)).

2.  The Text of the Statute

Under these well-established principles of statutory interpretation, the Court turns first to the text of the statute to determine whether it is plain on its face. If so, the Court's job is straightforward – there is no need to go beyond the words of an unambiguous statute. *See Raila*, 355 F.3d at 120 ("[s]tatutory construction begins with the plain text, and, 'where the statutory language provides a clear answer, it ends there as well'") (quoting *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999)).

The phrase "the debtor's interest in" in NYDCL § 282(2) is placed immediately before subclauses (a) through (e). It's placement immediately before subclauses (a) through (e) evidences that it applies to each subclause. The trustee acknowledges that a plain reading of NYDCL § 282(2) renders the phrase "the debtor's interest in" applicable to all subclauses that immediately follow. Hr'g Tr. at 13:5-7. Nevertheless, the trustee argues that NYDCL § 282(2) should be interpreted as follows:

> The debtor's right to receive **(and in the case of subclause (e), which shall include the debtor's interest in):** (a) a social security benefit, unemployment compensation or a local public assistance benefit; (b) a veterans' benefit; (c) a disability, illness, or unemployment benefit; (d) alimony, support, or separate maintenance, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor; and (e) all payments under a stock bonus, pension, profit sharing, or similar plan or contract on account of illness, disability, death, age, or length of service unless (i) such plan or contract, except those qualified under section 401, 408 or 408A of the United States Internal Revenue Code of 1986, as amended, was established by the debtor or under the auspices of an insider that employed the debtor at the time the debtor's rights under such plan or contract arose, (ii) such plan is on account of age or length of service, and (iii) such plan or contract does not qualify under section four hundred one (a), four hundred three (a), four hundred three (b), four hundred eight, four hundred eight A, four

> hundred nine or four hundred fifty-seven of the Internal
> Revenue Code of nineteen hundred eighty-six, as amended.

(proposed modified language emphasized).

In sum, the trustee argues that the statute should be construed so that the language "the debtor's interest in" applies solely to subclause (e) and urges the Court to follow *Wydner* and conclude that "the debtor's interest in" the proceeds of a workers' compensation award received prepetition is not exempt under NYDCL § 282(2). The Court declines to do so. The *Wydner* court found the phrase "the debtor's interest in" to be ambiguous and looked beyond the statute to the legislative history to discern its purpose. In so doing, the *Wydner* court concluded that the phrase "the debtor's interest in" applied only to the exemption for ERISA-qualified retirement plans under NYDCL § 282(2)(e). The *Wydner* court reasoned that the amendments made in 1989 to NYDCL § 282(2) ("1989 Amendments"), which included placing the phrase "the debtor's interest in" as the lead-in to subclauses (a)-(e), was designed to address treatment of ERISA-qualified retirement plans under subclause (e), and nothing more. As such, the *Wydner* court found that the addition of the phrase "the debtor's interest in" to NYDCL § 282(2) in the same set of amendments that dealt with retirement plans only related to subclause (e) to the exclusion of other subclauses in NYDCL § 282(2). 454 B.R. at 573.

The Court disagrees with the *Wydner* court's conclusion that the applicable statute is ambiguous and that its meaning must be gleaned from the legislative history. The statute in question is neither ambiguous nor contradictory. Rather, it is plain on its face, and there is no need for the Court to go beyond the text and consider legislative history. In NYDCL 282(2), the lead-in phrase "the debtor's interest in" is followed by five subclauses, (a) through (e). Each subclause is mutually exclusive and is deemed to have equal weight. The plain reading of the statute denotes that the phrase "the debtor's interest in" applies equally to each of the

subclauses that follow without differentiation, and not just to one particular subclause. Nothing in NYDCL § 282(2) indicates that "the debtor's interest in" should apply only to subclause (e), to wit, ERISA-qualified retirement plans. In short, the trustee asks this Court to rewrite the statute, which is neither silent nor unclear on the question at issue, so that the phrase "the debtor's interest in" applies solely to NYDCL § 282(2)(e) to the exclusion of subclauses (a)-(d), or place the phrase closer to NYDCL § 282(2)(e) as opposed to having it stand as the lead-in to all subclauses. Under familiar principles of statutory interpretation, that is not the function of a court when called upon to construe a term or phrase in a statute that is plain and unambiguous on its face. "[W]hen the statute's language is plain, the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms." *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) (internal quotations and citation omitted). The trustee's reading unreasonably restricts application of NYDCL § 282(2) and defeats the purpose of the statute. Additionally, the outcome advocated by the trustee undermines the distinct social policies of why we have exemption laws in the first place and countermands the protection given a debtor entitled to a disability benefit. In the trustee's view, workers' compensation benefits paid in installments, i.e., as an income stream, are exempt under NYDCL § 282(2)(c), but a lump sum payment received prepetition is not. Yet, they both serve the same purpose, protection of a debtor and his family from the hardship occasioned by a disabling work-related injury. No distinction need be drawn, and the statute in question does not say otherwise.

Because the text of the statute is precise and directly addresses the threshold issue presented to the Court, resort to the legislative history[9] is not necessary to resolve the parties'

---

[9] The Court notes that the legislative history to the 1989 Amendments is scant, and provides little clarity to why the legislature chose to add the phrase "the debtor's interest in" as the lead-in to each subclause of NYDCL

dispute – there is no need to go beyond the words of an unambiguous statute. *See Connecticut Nat'l Bank*, 503 U.S. at 253-54; *Raila*, 355 F.3d at 120; *C.W. v. City of New* York, 322 F. Supp. 3d 344 (E.D.N.Y. 2018).

Although the trustee's argument conflicts with the plain meaning of the statute, he nevertheless contends that the Court should be guided not by the plain meaning of NYDCL § 282(2), but rather by § 522(d)(10).[10] That section of the Bankruptcy Code is applicable when a debtor elects to exempt from property of the estate the property listed in § 522(d), to wit, the federal bankruptcy exemptions. *See* 11 U.S.C. § 522(b)(1), (2). As noted above, in this case the debtors chose the exemptions provided under New York law and federal non-bankruptcy law. They did not choose the federal bankruptcy exemptions. Section 522(d)(10), therefore, is not applicable to the present dispute. Nonetheless, the trustee asks this Court to interpret NYDCL § 282(2) by analogy to § 522(d)(10) which does not include the phrase "the debtor's interest in" as a lead-in to the designated property that is exempt under subclauses (A) through (E) of § 522(d)(10). The trustee's sole support for this theory is again the *Wydner* decision. And again, the Court respectfully disagrees with the rationale of the *Wydner* court. First, as noted, § 522(d)(10) is not applicable to the question placed before the Court as the debtors did not choose the federal exemptions set forth in § 522(d). Second, the trustee's argument renders the text "the debtor's interest in" as used in NYDCL § 282(2) meaningless. That result is contrary to the rules of statutory construction. "[I]t is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can

---

§ 282(2). If the intent was to have the lead-in language apply solely to subclause (e), why did the legislature choose to have it precede all of the subclauses? The legislature could have placed the phrase in subclause (e) and thus restrict its application to that particular subclause. It did not.

[10] Under § 522(d)(10), a debtor may exempt his or her "right to receive" – … (C) a disability, illness, or unemployment benefit." 11 U.S.C. § 522(d)(10).

be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)).

Third, if called upon to rule whether a workers' compensation payment received in a lump sum prepetition may properly be claimed as exempt under § 522(d), this Court would comfortably find that a workers' compensation payment received as a lump sum prepetition can qualify for the exemption permitted under § 522(d)(11)(E)[11] when the § 522(d)(10)(C) exemption is not available. *See In re Holstine*, No. 11-14573, 2012 WL 2891220 (E.D. Mich. 2012); *In re Arellano,* 524 B.R. 615 (Bankr. M.D. Pa. 2015). In *Holstine*, the court found that even though § 522(d)(10)(C) permits exemption for workers' compensation benefits paid in installments, i.e., over time as an income stream, that does not preclude a debtor from exempting workers' compensation benefits under § 522(d)(11)(E) when they are paid as a lump sum prepetition. In so finding, the *Holstein* court concluded that "to find the two provisions mutually exclusive would lead to an absurd result because it would prevent a debtor from claiming as exempt a benefit that it is otherwise uncontroversial is exemptible, solely because the debtor exercised his or her right to receive the funds in a lump sum payment. It seems unlikely that Congress would have intended to draw such a distinction. The Court will not read it into the statute." *In re Holstine*, 2012 WL 2891220, at *3. Similarly, in *Arellano* the court found that § 522(d)(10)(C) and § 522(d)(11)(E) are not mutually exclusive and concluded "that § 522(d)(11)(E) provides a basis upon which property traceable to a pre-petition lump sum workers' compensation settlement awarded for the loss of future

---

[11] Section 522(d)(11)(E) provides for an exemption for: "[t]he debtor's right to receive, or property that is traceable to … (E) a payment in compensation of loss of future earnings of the debtor or an individual of whom the debtor is or was a dependent, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor." 11 U.S.C. § 522(d)(11)(E).

earnings to the extent that the lump sum is reasonably necessary for the support of a debtor and the dependents of a debtor may be claimed as exempt." *In re Arellano*, 524 B.R. at 621.

This Court agrees with the well-reasoned approach taken by the courts in *Holstine* and *Arellano* and, in light of the purpose of workers' compensation statutes, perceives the injustice of allowing workers' compensation awards paid over time to be exempt yet denying the exemption for an award received in a lump sum.

Additionally, the Court notes that NYDCL § 282(3)(iv) mirrors § 522(d)(11)(E) so that even if the Court were to accept the trustee's argument that the phrase "the debtor's interest in" was intended to apply solely to subclause (e) of NYDCL § 282(2), the debtors may further amend schedule C (property claimed as exempt) and claim the prepetition workers' compensation award as exempt under the more limited exemption provided by NYDCL § 282(3)(iv), subject to any objection the trustee may have.

3. Precedent within the Second Circuit

In construing NYDCL § 282(2)(c) and permitting the debtors' claimed exemption, the Court does not write on a blank slate. Notwithstanding the ruling in *Wydner*, other courts in the Second Circuit have since considered whether the lead-in phrase "the debtor's interest in" applies to other subclauses of NYDCL § 282(2). The New York Court of Appeals and the United States Court of Appeals for the Second Circuit found that "the debtor's interest in" a rent stabilized lease is exempt as a public assistance benefit under NYDCL § 282(2)(a). The trustee in *Santiago-Monteverde v. Pereira (In re Santiago-Monteverde)*, 466 B.R. 621 (Bankr. S.D.N.Y. 2012), sought to accept an offer to purchase the debtor's rent-stabilized lease from the owner of the apartment building where the debtor resided. The bankruptcy court found that "all of the items listed in section 282(2) are payments of one sort or another that a debtor has the right to receive or in which the debtor has an interest", *Id.*, 466 B.R. at 523-24, but the benefit of paying below market rent was not a "public assistance benefit" entitled to any

exemption. Rather, the benefit was a privilege enjoyed by certain New Yorkers by virtue of being tenants in apartment buildings subject to rent stabilization laws. The District Court affirmed the bankruptcy court's decision, *In re Santiago-Monteverde*, Nos. 12 Civ. 4238(PRC), 11-15494(JMP), 2012 WL 2966335 (S.D.N.Y. Sept. 10, 2012), and the debtor appealed.

The Second Circuit stated that "[u]nder New York law, a debtor may exempt, among other things, her 'right to receive or … interest in … a social security benefit, unemployment compensation, or a local public assistance benefit.'" *In re Santiago-Monteverde,* 747 F.3d 153, 156 (2d Cir. 2014) (quoting NYDCL § 282(2)). Given the significance of the issue with respect to landlords and tenants, and the absence of authority concerning the impact of NYDCL § 282(2) on rent stabilized leases, the Second Circuit certified to the New York Court of Appeals the question of "[w]hether a debtor-tenant possesses a property interest in the protected value of her rent-stabilized lease that may be exempted from her bankruptcy estate pursuant to New York State Debtor and Creditor Law Section 282(2) as a 'local public assistance benefit'?". *Id.*, at 159.

The New York Court of Appeals noted that NYDCL § 282(2) exempts, among other things, "[t]he debtor's right to receive or the debtor's interest in: (a) a social security benefit, unemployment compensation or a local public assistance benefit". *In re Santiago-Monteverde*, 24 N.Y.3d at 289. Looking at the rent stabilization regulatory scheme and the purpose and effect of the program, the New York court held that a tenant's rights under a rent stabilized lease are a local public assistance benefit. Moreover, "mindful that exemptions statutes are to be construed liberally in favor of debtors", *Id.*, at 292 (citing *In re Miller*, 167 B.R. 782, 783, (S.D.N.Y. 1994)), the court held that NYDCL § 282(2) "exempts a debtor's interest in a rent-stabilized lease". *Id.*

In light of the New York Court of Appeals' decision, the Second Circuit held that the "[debtor]'s interest in her rent-stabilized lease is a local public benefit within the meaning of

DCL § 282[2](a). As a result, she is allowed to claim it as an exemption from her bankruptcy estate." *In re Santiago-Monteverde*, 780 F.3d 126, 128 (2d Cir. 2015) (reversing District Court decision and remanding for further proceedings consistent with the Second Circuit decision).

Similarly, the bankruptcy court in *In re Crutch*, 565 B.R. 36 (Bankr. E.D.N.Y. 2017), stated that New York "permits a debtor to exempt from property of the estate the right to receive certain benefits, including 'the debtor's interest in [NYDCL § 282(2)](a) a Social Security benefit,' and, with exceptions not relevant here, 'all payments under a stock bonus, pension, profit sharing, or similar plan or contract on account of illness, disability, death, age, or length of service.'" 565 B.R. at 38. While the court cited to NYDCL § 282(2)(e), it also referenced the exemption permitted for "the debtor's interest in" a social security benefit under NYDCL § 282(2)(a), noting that "debtors electing the New York exemption scheme can exempt their right to receive benefits from a pension plan and a Social Security benefit." *Id.*

While acknowledging the decision and rationale of *Crutch*, the trustee argues that it prohibits the debtors from tracing the workers' compensation award as being derived from a right to receive such award, which the trustee contends is the limit of the exemption under NYDCL § 282(2). Tracing, he argues, is available only with respect to personal property exempt under NYDCL § 282(3) which specifically sets forth a tracing concept. The *Crutch* court addressed the issue of whether exempt funds would retain their status after they have been withheld from income and then paid to federal and state taxing authorities as a tax, and then subsequently paid back to the debtors in the form of a tax refund. The court found the tracing of the tax refund to its source would not render the tax refund itself exempt. It is understandable that where a debtor converts exempt funds into nonexempt assets, the exemption may not extend to the nonexempt assets themselves and this may be particularly so when dealing with tax refunds as a taxpayer's tax liability and refund may reflect attributes such as tax rates, deductions and credits specific to each individual. Here, however,

the trustee's tracing argument is unavailing as there is no dispute that the proceeds of the check held by the debtors represent the disability or workers' compensation benefit that Mr. Nuara is entitled to receive. The check had not been deposited at the time the debtors filed their bankruptcy case.

### 4. "Benefit" Versus "Payment"

Lastly, the trustee argues that even if the Court were to find that the phrase "the debtor's interest in" applies to subclause (c) and permits an exemption for a disability, illness, or unemployment benefit, the terms "benefit" and "payment" are mutually exclusive and NYDCL § 282(2)(c) exempts only a disability, illness, or unemployment "benefit" whereas an exemption for a "payment" appears only in NYDCL § 282(2)(e). This argument by the trustee is likewise unavailing. Such a reading of "benefit" is too narrow and unsupported by the precedent in this Circuit. The bankruptcy court in *Santiago-Monteverde* noted that all items listed in NYDCL § 282(2) "are payments of one sort or another that debtor has a right to receive or in which the debtor has an interest. The natural inference is that the section only seeks to exempt certain kinds of qualifying payments." 466 B.R. at 623-24. The New York Court of Appeals took an even broader approach in finding that "benefits" is broader in scope than "payments".

> [W]hen legislature meant to refer only to 'payments' in the Debtor and Creditor law, it used that term. For example, in section 282(2)(e), it exempted certain "payments" under pension and other plans. But it used the broader term "benefit" in section 282(2)(a), indicating that benefits and payments are not the same. Likewise, the legislature has demonstrated that the general term "public assistance" denotes more than cash payments.

*Santiago-Monteverde*, 24 N.Y.3d at 290. Hence, a disability, illness or unemployment benefit that is exemptible under NYDCL § 282(2)(c) covers both cash and non-cash benefits. Additionally, accepting the trustee's argument that the terms "benefit" and a "payment" are

mutually exclusive goes beyond NYDCL § 282(c) as it would mean that payments received by a debtor prepetition by reason of "a social security benefit" as set forth in NYDCL § 282(2)(a) or "a veterans' benefit" as set forth in NYDCL § 282(2)(b) are not exemptible. Such an interpretation of the relevant statutory text leads to an absurd result, and is contrary to the broad social policy of providing such benefits in the first place.

In light of the *Santiago-Monteverde* decisions by the New York Court of Appeals and the Second Circuit and *Crutch*, and the plain reading of the statutory text at issue, the Court finds that "the debtor's interest in" certain personal property set forth in NYDCL § 282(2) is not, as the trustee asserts, limited to ERISA-qualified retirement plans under NYDCL § 282(2)(e). Consistent with New York's policy of exempting disability and workers' compensation benefits from creditors' claims generally, "the debtor's interest in" a disability, illness or unemployment benefit under NYDCL § 282(2)(c) embraces both pre- and post-petition receipt of a disability or workers' compensation award.

III.    Conclusion

The Court has considered all the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. For the foregoing reasons, the Court overrules the trustee's objection to the debtors' claimed exemption. The exemption for the workers' compensation award as set forth in amended schedule C (property claimed as exempt) to the debtors' bankruptcy petition is allowed.

So ordered.

**Dated: October 16, 2019**                                                    *Louis A. Scarcella*
**Central Islip, New York**                                             **Louis A. Scarcella**
                                                                    **United States Bankruptcy Judge**